UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DONNELL MITCHELL, | CASE NO. 1:07 CV 1621 |
| Plaintiff, | JUDGE SOLOMON OLIVER, JR. |
| v. | MEMORANDUM OF OPINION AND ORDER |
| CUYAHOGA COUNTY, OHIO INC. | |
| Defendant. | |

On June 1, 2007, pro se plaintiff Donnell Mitchell filed the above-captioned in forma pauperis action against defendant "Cuyahoga County, Ohio Inc."  He asserts "[t]his action is commenced pursuant to § 12112.2201 and 2202 and 42 U.S.C., section 1983. SEC. 12101. *[Section 2].*"[1] (emphasis in original).  He claims "[o]n advise of counsel I am filing a sexual harassment lawsuit under the american's under disability act of 1990.  I was harassed by this obsessed city employee." (Compl. at 10.)  He seeks an injunction to prevent the defendant from "continuing its discrimination."

*Background*

Many of the relevant facts in this case are almost identical to two other lawsuits Mr. Mitchell filed in this court on May 30, 2007.  See Mitchell v. Alexander, No. 1:07cv1580 (N.D.

---

[1] The court presumes that "12112" is a reference to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112.

Ohio filed May 30, 2007)(O'Malley, J.); Mitchell v. City of Cleveland, No. 1:07cv1581 (N.D. Ohio filed May 30, 2007) (O'Malley, J.) As with the parallel cases, he alleges was advised by counsel in May 2007 to file a lawsuit in federal court against Cuyahoga County.[2] His attorney "strongly believe[d] that Cuyahoga County used the unlimited resources of the Cleveland Police Department and City and County prosecutors [sic] office to engage in malicious practices aimed at the manipulation of a mentally challenged person[,] a clear violation of the Americans with Disabilities Act of 1990." (Compl. at 1.)

On August 29, 2000, Mr. Mitchell was on the third floor of the Justice Center in Cleveland, Ohio. At that time he claims that his bail bondsman badge was taken by the Deputy Sheriff's Department "until the hearing date that was set for September 11, 2000." (Compl. at 2.) He provides no further details regarding the events which led up to the removal of his badge. Further, it is not clear whether Mr. Mitchell was present in court for the September 11, 2000 hearing, but he does allege that he "took the stand" in Cleveland Municipal Court on September 18, 2000 and "explained to Judge McMongale in clear terms that he was indeed the cause of the disturbance in the justice center." (Compl. at 2.) He explained further that "he was to blame for the entire incident as the court transcripts show Cuyahoga County Prosecutor Peter Gauthier commended Donnell Mitchell for steping [sic] up [to] the stand not wasting the court[']s time by making excuses." (Compl. at 2.) Mr. Mitchell stated that he was found in contempt of court and was suspended from writing bonds at the Cleveland Justice Center for thirty (30) days. He believed that he would be permitted to return to work in "bail bonds job," effective October 18, 2000,

---

[2] In the earlier lawsuits he was advised to file complaints against Michael Alexander and the City of Cleveland, Ohio.

however a series of events interfered with that expectation.

Mr. Mitchell filed a police report on November 11, 2000 after his van was broken into and some of its contents were stolen. He spoke with Officer Simon Robert who explained the procedures plaintiff needed to follow in order to pursue the matter. The following day, plaintiff was pulled over by a Cleveland Police officer because his van still had dealer plates on it. He claims the officer stated that his van "'was becoming an eye soar at the Justice Center' and people didn't like it. Also it was 'offensive to law enforcement' and it would be removed from downtown Cleveland."[3] (Compl. at 3.) Over the next sixty (60) days Mr. Mitchell was "ordered . . . to court for soliciting of all things on at least 15 different occasions." (Compl. at 3.)

On November 14, 2000, Mr. Mitchell spoke with Theresa Franklin at the Justice Center because he understood that she had information regarding the theft of property from his van. During the course of their conversation, Ms. Franklin allegedly started yelling: "'This is why we took your shit.' And 'my daddy will kick your ass' and 'that leather jacket fit my daddy really good.'" (Compl. at 3.) Mr. Mitchell was alarmed that she mentioned some of the items which were stolen from his van because they were not listed on the police report. He states that "because of [his] medical condition he started yelling as well outside of the Justice Center." (Compl. at 3.) Ms. Franklin was allegedly "ordered" by her boss to file a police report on the following date wherein plaintiff was charged with a 4th degree misdemeanor. From that date until June 8, 2001, he was "not allowed to go into the public justice center . . . while the erroneous case was still pending."

---

[3] Mr. Mitchell alleges that several municipal employees explained to him that his bail bond van was considered a "'circus act' and the Cuyahoga County Prosecutors office and deputy sheriffs did not like his choice of marketing techniques." (Compl. at 2.) He claims further that "employees" stated that they would work with the Cleveland Police department to run him out of business.

3

(Compl. at 4.)

Mr. Mitchell claims further that Ms. Franklin and Sonya Aldridge allegedly attempted to extort money from him, as well as from his business associates, between November 2000 and November 2003. These tactics were allegedly used to 'run' Mr. Mitchell out of the bail bond business in violation of the ADA. He adds that the City and County changed the case facts to create a crime of "retaliation" and "intimidation" even though they knew Ms. Franklin's testimony had nothing to do with Donnell Mitchell being found in contempt." (Compl. at 5.) It is at this point in the complaint where Mr. Mitchell begins to reflect back on his accusations of sexual harassment and retaliation against Cleveland Police Detective Michael Alexander as a possible motivation for the charges filed against him. See Mitchell v. Alexander, No. 1:07cv1580 (N.D. Ohio filed May 30, 2007).

On June 8, 2001, Mr. Mitchell was prepared to go to trial, but his attorney John Luskin allegedly "used coercion to force Donnell Mitchell to sign the paper on June 8, 2001 that he did not clearly understand."[4] (Compl. at 5.) He claims Mr. Luskin pressured him by stating that he needed to "'sign the paper or never work down here again.'"[5] (Compl. at 5.)

Mr. Mitchell seeks an order from this court removing "false allegations" from his record. He claims he was wrongly accused and charged with a non-violent crime on December 16,

---

[4] Mr. Mitchell filed an unsuccessful lawsuit in this court against Mr. Luskin in May, 2007. Mitchell v. Luskin, No. 1:07cv1578 (N.D. Ohio filed May 30, 2007). Judge Polster dismissed the case on the merits August 15, 2007.

[5] The attachments to the complaint indicate Mr. Mitchell was charged with "intimidation" and "aggravated menacing." On May 30, 2001, he entered a plea and was sentenced to an unspecified term on the same date. See State of Ohio v.Mitchell, No. CR-00-400420-A (Cuy. Cty. Ct. 2000)(McGinty, J.)

2000. His cash or surety bond was set at $150,000.00, which plaintiff claims is very unusual for a first time offender. Mr. Mitchell adds that he was not permitted to participate in the municipal or county court's "First Offender" program, which is standard practice. He attaches copies of the bond set for other offenders for violent crimes and claims that this illustrates his point that the municipal judge violated his right to a reasonable and fair bond.

Mr. Mitchell seeks $150,000,000.00 in lost revenue from the defendant for "purposely breaking our verbal and written contract that allowed Donnell Mitchell to write bail bonds in the Cuyahoga County." (Compl. at 8.) For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. § 1915(e).

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[6] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). This action lacks an arguable basis in law.

*Failure State Claim*

In spite of the fact that Mr. Mitchell asserts this court's jurisdiction pursuant to the

---

[6] A claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

ADA, Civil Rights Act and Title VII, he has failed to state a claim for relief under any of these statutes. There are no violations of the Constitution alleged, see Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)(section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws), no explanation as to why he is entitled to protection from sexual harassment under the ADA and no allegation that Mr. Mitchell was discriminated against by his employer. See 42 U.S.C. § 12112 (ADA prohibits an employer from discriminating against a qualified individual with a disability).

The essence of Mr. Mitchell's allegations involve his claim that false charges were brought against him in the Cuyahoga County Municipal Court. For the court to provide him the relief he is seeking it would have to set aside the judgment of the municipal court. The Rooker-Feldman doctrine, however, prohibits lower federal courts below the United States Supreme Court from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." Executive Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783, 793 (6th Cir.2004) (citations omitted).[7] Recently, the Supreme Court explained that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and rejection of those judgments." Exxon Mobil Corp., v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)

---

[7] The Rooker-Feldman doctrine, applied by this court only twice, first in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), then, 60 years later, in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Even liberally construing the facts in Mr. Mitchell's favor as a pro se litigant the court cannot identify any legal claim over which it has subject matter jurisdiction. Principles requiring generous construction of pro se pleadings are not without limits. Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Id. at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278.

Further, legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (A pleading will not be sufficient to state cause of action under Civil Rights Act if its allegations are but conclusions). The claims in the instant complaint are unavailing.

Accordingly, plaintiff's application to proceed in forma pauperis is granted and this action is dismissed under section 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[8]

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

August 17, 2007

---

[8] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.